UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------- x
                                                       :

SEAMUS DESMOND                         :         3:08 CV 927 (JBA)
                                                       :
V.                                                        :
                                                       :
MICHAEL J. ASTRUE                  :         DATE: AUGUST 27, 2009
COMMISSIONER, SOCIAL SECURITY  :
ADMINISTRATION                      :
---------------------------------------------------------- x

<u>RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER</u>

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, seeks review of a final decision by the Commissioner of Social Security denying plaintiff Disability Insurance Benefits ["DIB"] and Supplemental Security Income ["SSI"] disability benefits.[1]

## I.  ADMINISTRATIVE PROCEEDINGS

Plaintiff, Seamus Desmond, has been seeking benefits from defendant for more than a decade. Although, according to plaintiff, his initial application for DIB was filed in 1994/1995 (see Tr. 90-91), the first application in the administrative transcript is plaintiff's application for SSI, dated March 26, 1996,[2] in which he alleged an inability to

---

[1]According to the Commissioner, there is no Title II application before the Court, so that this case concerns only a review of the final decision of the Commissioner relating to a Title XVI April 2, 1998 application for SSI benefits. (Dkt. #25, Brief, at 1).  <u>See</u> Section III.B. <u>infra</u>.

[2]The Commissioner asserts that in the final hearing decision of ALJ Thomas, which decision is on appeal to this Court, the ALJ "expressly declined to reopen any prior decisions," finding no application was made in 1995, and plaintiff's insured status expired on December 31, 1990, prior to which date there was no evidence of any impairment, and there is no good cause for reopening any of the 1996 applications. (Dkt. #25, Brief, at 2, 6-7; <u>see</u> note 6 <u>infra</u>).

1

perform substantial gainful activity since November 1, 1995, due to psoriasis, asthma and alcoholism. (See Certified Transcript of Administrative Proceedings, dated July 25, 2008 ["Tr."] 145-47; see Tr. 148-49, 158-66).  The Social Security Administration ["SSA"] denied plaintiff's claim both initially and upon reconsideration.  (See Tr. 95, 108-11).

On April 2, 1998, plaintiff filed his second application for SSI.[3] (Tr. 150-52). Again, the SSA denied plaintiff's claim both initially and upon reconsideration.  (See Tr. 96-98, 112-15, 118-21; see Tr. 116-17).[4]  On February 16, 1999, plaintiff requested a hearing before an ALJ (Tr. 122-23; see Tr. 124-25), and on May 12, 1999, a hearing was held before ALJ Samuel Kanell;[5] plaintiff did not appear for the hearing.  (See Tr. 39-46; see also Tr. 126-32).  At the May 12, 1999 hearing, counsel moved to determine plaintiff's date last insured, amend plaintiff's onset date of disability to January 1, 1998, reopen the March 26, 1996 application, and treat plaintiff's SSI applications as Title II applications. (Tr. 41-43; see Tr. 39-46, 133-35).[6]  On July 12, 1999, a second hearing was held before

---

[3]In this application, plaintiff's disabling condition is listed as "[b]i[p]olar - [m]anic," with an onset date of September 15, 1968, although November 1, 1995 is the date on which plaintiff could no longer perform substantial gainful activity.  (Tr. 167).

[4]On December 22, 1998, after Connecticut DDS requested the assistance of the Office of the Inspector General ["OIG"] to investigate fraudulent claims, SSA issued a SSA-553 Special Determination regarding "[w]hether there is reason to believe that fraud or similar fault was involved in providing evidence for [plaintiff's] claim for SSI disability payments . . . ." (Tr. 102-05; see Tr. 106).  Linda Hyatt, a DDS and SSA representative, concluded that there was reason to believe a false medical report was provided by Manny Lieberman, Dr. John Moore, and/or another individual, and that plaintiff knowingly provided false and/or incomplete information concerning his psychiatric impairment, treatment and history, and thus "it is appropriate to disregard the . . . medical report on which Dr. John Moore's name appears" as a treating source.  (Tr. 105).

[5]Plaintiff was represented by counsel.  (See Tr. 38).

[6]Additionally, in a letter, dated August 20, 1999, counsel for plaintiff requested that ALJ Kanell reopen plaintiff's March 26, 1996 and May 23, 1996 applications, and that ALJ Kanell determine plaintiff's date last insured.   (Tr. 144).

ALJ Kanell, at which plaintiff testified.  (Tr. 47-94; see Tr. 136-43).  On September 3, 1999, ALJ Kanell issued his decision denying plaintiff's claim.  (Tr. 23-37).[7]

On October 5, 1999, plaintiff requested review of ALJ Kanell 's decision by the Appeals Council.  (See Tr. 21-22).  On May 7, 2002, the Appeals Council denied plaintiff's request for review, rendering ALJ Kanell's decision the final decision of the Commissioner.  (See Tr. 6-7; see Tr. 8-20).   Thereafter, plaintiff commenced an action in the United States District Court for the District of Connecticut, Desmond v. Barnhart, 3:02 CV 948 (JCH).  (See Tr. 654-76).  On June 7, 2004, United States Magistrate Judge Holly Fitzsimmons issued a Recommended Ruling granting defendant's Motion for Entry of Judgment pursuant to sentence four of § 405(g) of the Social Security Act, and remanding the case,[8] which was ratified and approved, absent objection, by United States District Judge Janet C. Hall on July 19, 2004.  (Tr. 626-27; see Tr. 625).  On January 27, 2005, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further administrative proceedings.  (Tr. 618; see Tr. 628-29).

A hearing was held on June 29, 2005 before ALJ Ronald J. Thomas, at which plaintiff and Courtney Olds, a vocational expert, testified.  (Tr. 1132-74; see Tr. 630-33, 634-39, 646-53).  On October 25, 2005, ALJ Ronald J. Thomas issued his decision denying plaintiff's claim.  (Tr. 601-17).  On November 17, 2005, plaintiff, through counsel,

---

[7]ALJ Kanell also concluded that plaintiff's request to reopen his March 26, 1996 application for SSI and any other prior application was moot.  (Tr. 26).

[8]Specifically, the case was remanded so that an ALJ "may consider all of the plaintiff's impairments, including drug and alcohol abuse, give further consideration of the opinion of Dr. Moore and the OIG report . . ., consider any evidence obtained in conjunction with the subsequent claim . . . and, as appropriate, update the record."  (Tr. 626; see note 4 supra).  According to plaintiff, the latter references a Court order to the ALJ to consider any evidence relating to plaintiff's 2002 application if it is pertinent to the 1994, 1995, 1996 and 1998 applications.  (Dkt. #16, Brief, at 5).

filed written exceptions to ALJ Thomas' decision. (Tr. 597-600). On November 21, 2005, plaintiff requested review of the ALJ's decision. (Tr. 596). On May 17, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's October 25, 2005 decision, rendering ALJ Thomas' decision the final decision of the Commissioner. (Tr. 593-95).[9]

Plaintiff filed his Complaint on June 18, 2008 (Dkt. #3),[10] in response to which defendant filed his Answer on September 19, 2008 (Dkt. #11),[11] after which no action occurred in the case until plaintiff filed, under seal, his Motion for Order Reversing the Decision of the Commissioner, and brief in support, on April 21, 2009. (Dkt. #16; see Dkts. ##12-15, 17).[12] On July 16, 2009, defendant filed his Motion for Order Affirming the Decision of the Commissioner and brief in support. (Dkt. #25; see Dkts. ##21-24).

---

[9]Separate from the procedural history as recited above regarding plaintiff's April 2, 1998 SSI application, on June 10, 2002, plaintiff filed another application for SSI benefits which was granted through the present, and on September 2, 2002, plaintiff received his notice of award of benefits. (Tr. 783-91; see Tr. 678-86; Dkt. #16, Brief, at 2). Accordingly, plaintiff did not submit to the ALJ any medical reports or records covering the period May 2002 through the present.

[10]Plaintiff commenced this action in forma pauperis on June 9, 2008. (Dkts. ##1-2). On June 18, 2008, counsel filed his appearance. (Dkt. #5).

[11]Attached to defendant's Answer is a certified copy of the two-volume transcript of the record, dated July 25, 2008. (Dkt. #11).

[12]On May 5, 2009, defendant filed his Motion to Strike Plaintiff's Brief and Motion to Reconsider Order Allowing Plaintiff's Motion to Seal Records, and brief in support (Dkts. ##18, 20), which motions were referred to this Magistrate Judge on May 18, 2009. (Dkt. #19). On July 21, 2009, plaintiff filed a Motion for Hearing on Plaintiffs' Motions for Permission to File Unredacted Copies Under Seal or in the alternative, Motion for Remand for a Rehearing (Dkt. #27), in this and six other Social Security files; this motion was referred to this Magistrate Judge six days later. (Dkt. #28). On August 17, 2009, defendant filed his brief in opposition. (Dkt. #29).

The Magistrate Judge agrees that plaintiff's brief does refer to highly sensitive medical and psychiatric information not discussed in this Recommended Ruling, so that the brief will remain under seal, pending further Court order. Accordingly, defendant's Motion to Strike (Dkt. #18) is denied, and plaintiff's Motion for Hearing (Dkt. #27) is denied without prejudice as moot with respect to this file.

The next day, defendant's motion was referred to this Magistrate Judge from United States District Judge Janet Bond Arterton. (Dkt. #26).

For the reasons stated below, plaintiff's Motion for Order Reversing the Decision of the Commissioner, or in the alternative, Motion for Remand for a Rehearing (Dkt. #16) is **granted in part** and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. #25) is **denied**. Additionally, defendant's Motion to Strike (Dkt. #18) is **denied**, and plaintiff's Motion for Hearing (Dkt. #27) is **denied without prejudice as moot** with respect to this file.

## II. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citation omitted); see Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998)(citation omitted). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp.2d 179, 189 (D. Conn. 1998)(citation omitted); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)(citations omitted). However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. See Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993)(citation omitted). Instead, the court must scrutinize the entire record to determine the

reasonableness of the ALJ's factual findings.  See id.  Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise.  See 42 U.S.C. § 405(g); see also Beauvoir v. Charter, 104 F.3d 1432, 1433 (2d Cir. 1997)(citation omitted).

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.  See  42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process.  See 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently working.  See 20 C.F.R. § 404.1520(a).  If the claimant is currently employed, the claim is denied.  See  20 C.F.R. § 404.1520(b).  If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied.  See 20 C.F.R. § 404.1520(c).  If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"].  See 20 C.F.R. § 404.1520(d); Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Balsamo, 142 F.3d at 79-80.  If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled.  See 20 C.F.R. § 404.1520(d); see also Balsamo, 142 F.3d at 80.  If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his

former work.  See 20 C.F.R. § 404.1520(e).  If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work.  See Balsamo, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment.  See 20 C.F.R. § 404.1520(f); see also Balsamo, 142 F.3d at 80 (citations omitted).

The Commissioner may show a claimant's Residual Functional Capacity ["RFC"] by using guidelines ["the Grid"].  The Grid places claimants with severe exertional impairments, who can no longer perform past work, into employment categories according to their physical strength, age, education, and work experience; the Grid is used to dictate a conclusion of disabled or not disabled.  See 20 C.F.R. § 416.945(a)(defining "residual functional capacity" as the level of work a claimant is still able to do despite his or her physical or mental limitations).  A proper application of the Grid makes vocational testing unnecessary.

However, the Grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders, are not covered.  See 20 C.F.R. § 200.00(e)(2).  If the Grid cannot be used, i.e., when nonexertional impairments are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is generally required to support a finding that employment exists in the national economy which the claimant could perform based on his residual functional capacity.  See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)(citing Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986)).

III.  DISCUSSION

In the Remand Order approved and adopted by Judge Hall on July 19, 2004, this case was remanded with the following instructions to the ALJ: 1) to consider all of plaintiff's impairments, including drug and alcohol abuse; 2) to give further consideration to the opinion of Dr. Moore and the OIG report;[13] 3) to consider any evidence obtained in conjunction with the subsequent claim to the extent that it is relevant to the period at issue; 4) if appropriate, to update the record; 5) if warranted, to obtain vocational expert testimony to determine the impact of any established limitations on plaintiff's occupational base;[14] and 6) if plaintiff is found disabled, to make a complete determination of materiality of drug and alcohol abuse.  (Tr. 626).

Plaintiff seeks an order reversing the decision of the Commissioner, or the alternative, a remand for a rehearing.  (See Dkt. #16).  Plaintiff contends that he is "before this Court for the second time seeking . . . [DIB] and additional retroactive . . . [SSI]" benefits. (Dkt. #16, Brief, at 1). According to plaintiff, the ALJ failed to follow the prior court order in failing to obtain plaintiff's 2002 application as the Commissioner stated he would in his May 10, 2004 memorandum before Judge Hall, and in failing to

---

[13]In his decision, ALJ Thomas noted that the Remand Order directs him to give further consideration to the opinion of Dr. Moore and the OIG report, and under SSR 00-2p, for an ALJ to disregard evidence based on findings by the OIG, the ALJ's review must be de novo. (Tr. 605). Citing the time and complexities involved in completing such a review, ALJ Thomas excluded the challenged evidence but noted that the evidence submitted by Dr. Moore and Therapist Lieberman will be analyzed based on the factors contained in 20 C.F.R. § 416.927 and SSRs 92-2p and 96-7p. (Tr. 605-06).

[14]Pursuant to the Remand Order, an vocational expert testified at plaintiff's hearing on June 29, 2005.

provide the medical records for the period May 2002 and later, as the ALJ "clearly believe[d] that updated records [were] important." (Dkt. #16, Brief, 16-19, 29).[15]

In response, the Commissioner contends that there is no judicial review available for the ALJ's refusal to reopen prior applications that were not appealed, and thus were not final decisions of the Commissioner made after a hearing. (Dkt. #25, Brief, at 6-7). Additionally, the Commissioner argues that there was no error as to the breadth of the evidence considered as the evidence after May 2002 had no bearing on the period at issue here (id. at 7-8), and the plaintiff is not entitled to an award of Title II benefits as there is no Title II claim to review. (Id. at 8).[16]

---

[15]Additionally, plaintiff contends that the ALJ failed to consider all of plaintiff's illnesses and ailments singly or in combination (id. at 19-22), and the ALJ committed factual errors in his evaluation of the evidence by concluding that plaintiff's illnesses and ailments are not severe because they are stable with treatment and medication (id. at 23), by concluding that the records fail to document significant ongoing complaints (id.), by ignoring plaintiff's gastrointestinal ailments (id. at 23-24), by concluding that plaintiff is continuously abusing drugs and alcohol (id. at 24-25), by emphasizing plaintiff's substance abuse records and by concluding that plaintiff's greater limitations in mental functioning are attributable to his chronic substance addiction disorder, while contradictorily acknowledging his periods of sobriety (id.), by minimizing the severity of plaintiff's mental illness and the reports of Dr. Waynik (id. at 25, 26, 28, 29), by overstating plaintiff's activities of daily living (id. at 25-26), by rejecting the opinions of Drs. Moore and Africano (id. at 26, 27), by giving an incoherent definition of "moderate" (id. at 26), and by failing to properly assess plaintiff's asthma and psoriasis. (Id. at 27, 28-29). Furthermore, according to plaintiff, the ALJ did not explain why plaintiff does not meet Listing 12.04 (Dkt. #16, Brief, at 30-31); the treating physician rule requires a finding of disability (id. at 32-34); and the ALJ improperly used the Grids. (Id. at 34-37).

[16]Moreover, the Commissioner contends that plaintiff's alcohol and drug abuse were the only issues preventing him from substantial gainful activity (id.); plaintiff's angina and gastrointestinal ailments existed in 1996 and 1997, and thus bear no relevance here (id. at 8-9); there is no evidence that his cervical spine degenerative disc disease identified in May 2002 was an ongoing problem prior to the one month before he was granted benefits (id. at 9); plaintiff has failed to demonstrate that any of his conditions are severe (id. at 10); the evidence of record demonstrates that plaintiff's drug and alcohol abuse continues to be a "major problem" for plaintiff (id. at 11-13); and the ALJ's reliance on the Grid and vocational expert evidence was proper. (Id. at 14-15).

A. JURISDICTION OVER THE ALJ'S REFUSAL TO REOPEN PRIOR APPLICATIONS

Under the Social Security Act, a federal court has jurisdiction over a Social Security appeal after the Commissioner renders a final decision. 42 U.S.C. 405(g).[17] As articulated by Congress, such final decision occurs after a claimant is a party to his or her hearing, and no findings of fact or decision by the Commissioner shall be reviewed except for as provided in the Act. 42 U.S.C. § 405(h). The Commissioner, in the Social Security Regulations, has articulated a four-step process by which a claimant must exhaust certain administrative remedies before proceeding to court. First, a claimant files an application for benefits and receives an initial determination. 20 C.F.R. § 404.902. If a claimant is "dissatisfied with the initial determination," he may request reconsideration, 20 C.F.R. § 404.907, and if he is still dissatisfied with the reconsidered decision, he may request a hearing before an ALJ. 20 C.F.R. § 404.929. The claimant may seek review of an unfavorable decision by an ALJ by requesting that the Appeals Council review the ALJ's decision. 20 C.F.R. § 404.967. The subsequent decision by the Appeals Council is the final decision of the Commissioner; thus, a claimant may then seek judicial review by filing an action in a federal district court within sixty days after receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981.

---

[17] 42 U.S.C. 405(g) reads, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

10

As an initial matter, plaintiff did not exhaust his administrative remedies with respect to the earlier applications at issue, so that no final decision entered.[18] Furthermore, an ALJ's decision to grant or deny a plaintiff's request to reopen prior applications is discretionary, and in this case, ALJ Thomas concluded that good cause[19] does not exist to reopen plaintiff's applications. See 20 C.F.R. §§ 404.903(l), 404.987(b). The denial of a request to reopen is not a final decision of the Commissioner made after a hearing, and thus is not subject to judicial review. Califano v. Sanders, 430 U.S. 99, 106-09 (1977); Latona v. Schweiker, 707 F.2d 79, 81 (2d Cir. 1983); 20 C.F.R. § 404.903(l).

### B. TITLE II CLAIM VERSUS TITLE XVI CLAIM PENDING

According to plaintiff, he has a Title II claim for DIB, 42 U.S.C. §§ 401-33, pending before the Court, as well as an "additional retroactive" Title XVI claim for SSI, 42 U.S.C. §§ 1381-1383f . (See Dkt. #16, Brief, at 1). In light of the conclusion reached in Section II.A. supra, there is only one application on appeal to this Court -- plaintiff's Title XVI application for SSI, filed on April 2, 1998.

---

[18]The principal of exhaustion is an important one as exhaustion

> is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

Weinberger v. Salfi, 422 U.S. 749, 765 (1975)(citation omitted).

[19]An claimant may establish "good cause" by furnishing new and material evidence, demonstrating a clerical error, or offering evidence in the administrative record that "clearly shows on its face that an error was made." 20 C.F.R. § 416.1489(a).

In this case, after reviewing "SSA's data base," ALJ Thomas concluded that claimant filed only one prior application for SSI benefits on March 26, 1996, and his date last insured for Title II benefits is December 31, 1990, prior to which date there is no evidence of medical impairments. (Tr. 605). Accordingly, ALJ Thomas concluded that  good cause does not exist to reopen the March 26, 1996 Title II application. (Tr. 605).

## C. ALJ'S FAILURE TO OBTAIN THE FILE OF THE JUNE 2002 APPLICATION

As stated above, the Remand Order directed the ALJ, inter alia, to "consider any evidence obtained in conjunction with the subsequent claim to the extent that it is relevant to the period at issue," and to update the record. (Tr. 626). The subsequent claim refers to the June 10, 2002 SSI application that was granted (see Tr. 783-91; see also Tr. 678-86), and the "period at issue" is the period up to and including the period surrounding the June 2002 award. While this Court agrees with defendant that defendant's failure to provide that information to the ALJ ordinarily would be harmless because the period at issue ended after June 9, 2002, and the ALJ was provided with records until May 2002, in this case, ALJ Thomas made multiple references to the absence of these records as evidence of an improvement in plaintiff's condition. (See Tr. 608, 610-14). Thus, contrary to defendant's assertion, defendant's failure to abide by the Remand Order, and to abide by his promise to plaintiff to obtain the file, which is in the "sole possession and control" of defendant (see Dkt. #16, Brief, at 16-17), significantly harmed plaintiff as ALJ Thomas relied on the absence of these records as evidence supporting his conclusion that plaintiff is not disabled.[20]

Specifically, the ALJ noted, with respect to plaintiff's history of alcohol and drug abuse, that "[i]n any event, the record does document that the claimant has not sought psychiatric treatment since May 2002" (Tr. 608)(citation omitted), and "[s]ignificantly, there is no record of further treatment after May 2002." (Tr. 610). With respect to his conclusion that plaintiff lacks mental health impairments when he is not abusing drugs

---

[20]Additionally, as plaintiff correctly points out, there is evidence, albeit limited, in the administrative transcript that plaintiff continued to receive treatment after May 2002, and continued to take his prescribed psychiatric medications. (See Dkt. #16, Brief, at 17; see Tr. 1085, 1107, 1122-23).

12

and alcohol, the ALJ noted that "[i]n fact, there is no record of further mental health treatment after May 2002 and this coincides with his reports of when he stopped abusing alcohol and drugs," and "[i]n fact, the record reflects that the claimant has not sought mental health treatment since May 2002 and that during this visit [to Dr. Africano,] he reported improvement with medication." (Tr. 611)(citation omitted). Further, ALJ Thomas observed that "the record reflects that the claimant was actively abusing drugs and alcohol through May 2002[,] . . . [and] [t]here is no record that the claimant has ever sought ongoing mental health treatment." (Tr. 612)(citation omitted). When he addressed plaintiff's physical impairments, the ALJ commented that "[w]hile [plaintiff] alleges that his asthma and psoriasis are disabling, this is not supported by the record given his lack of ongoing and intensive treatment for any of his conditions . . . [and] corroboration is found in the fact that there is no record of any further treatment after May 2002, [which] is inconsistent with reports of debilitating psoriasis, asthma and depression." (Tr. 613-14)(citations omitted).

### D. PLAINTIFF'S REMAINING ARGUMENTS

In light of the conclusion reached in Section III.C. supra, the Court need not address plaintiff's remaining arguments.

### IV. CONCLUSION

For the reasons stated above, plaintiff's Motion for Order Reversing the Decision of the Commissioner, or in the alternative, Motion for Remand or Rehearing (Dkt. #16) is **granted in part such that this matter is remanded so that the ALJ can obtain the 2002 file, consider the medical evidence from that file to the extent it is relevant to the period at issue, and update the file so that the ALJ may make a**

**thorough determination of disability**, and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. #25) is **denied**.  Additionally, defendant's Motion to Strike (Dkt. #18) is **denied**, and plaintiff's Motion for Hearing (Dkt. #27) is **denied without prejudice as moot** with respect to this file.

The parties are free to seek the district judge's review of this recommended ruling.  See 28 U.S.C. §636(b)**(written objection to ruling must be filed within ten days after service of same)**; FED. R. CIV. P. 6(a), 6(e), & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 27th day of August, 2009 at New Haven, Connecticut.

/s/Joan Glazer Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge